1  Wm. Matthew Ditzhazy, City Attorney (SBN 117914)
2  Noel J. Doran, Deputy City Attorney (SBN 222843)
   CITY OF PALMDALE; and
3  Deborah J. Fox (SBN 110929)
   dfox@meyersnave.com
4  Dawn A. McIntosh (SBN 162713)
5  dmcintosh@meyersnave.com
   MEYERS, NAVE, RIBACK, SILVER & WILSON
6  333 South Grand Avenue, Suite 1670
7  Los Angeles, California 90071
   Telephone: (213) 626-2906
8  Facsimile: (213) 626-0215
9
10 Attorneys for Plaintiff
   CITY OF PALMDALE
11

FILED
CLERK, U.S. DISTRICT COURT

JUL - 6 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

12              UNITED STATES DISTRICT COURT

13    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

14 | CITY OF PALMDALE, a charter city,    | CASE NO.
                                          | LACV11-5545 R(MANx)
15 |            Plaintiff,                 | COMPLAINT FOR DECLARATORY
16 |                                       | AND INJUNCTIVE RELIEF FOR
                                          | MISUSE OF FEDERAL GRANT
17 |     v.                               | FUNDS AND STATE BOND FUNDS;
                                          | EXHIBITS A-L IN SUPPORT
18 | CALIFORNIA HIGH-SPEED RAIL           | THEREOF
   | AUTHORITY, a public agency;
19 | ROELOF VAN ARK, Chief Executive      |
20 | Officer; and DOES 1-10, inclusive,   | DEMAND FOR JURY TRIAL
21 |                                       |
   |            Defendants.               |
22

23

24

25

26

27

28

## INTRODUCTION

1.     Plaintiff City of Palmdale, California ("the City"), brings this complaint for declaratory and injunctive relief against Defendants for their misappropriation of federal monies specifically earmarked under the American Recovery and Reinvestment Act pursuant to a grant issued by the Federal Railroad Administration in 2010 and state bond funds issued pursuant to Proposition 1A passed by the California voters in 2008.  Defendants are using these federal and state funds to undertake a study that is not authorized by either funding source.  These reckless actions could jeopardize the future of the High-Speed Rail project in California and they must be enjoined.  By this complaint, the City of Palmdale alleges as follows:

## JURISDICTION

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 2201 (authorizing declaratory relief) and 2202 (authorizing injunctive relief).

3.     This Court has supplemental jurisdiction over the City's state law claim under 28 U.S.C. §1367(a).

## VENUE

4.     Venue is proper in the Central District of California in that the events or omissions giving rise to the City's claims are occurring in this District.  28 U.S.C. §1391(b).

## THE PARTIES

5.     Plaintiff City of Palmdale is a duly incorporated, charter city in the County of Los Angeles, State of California.

6.     Defendant High-Speed Rail Authority ("the Authority") was established as an independent state authority pursuant to state legislation in 1996 and charged with planning, constructing and operating a statewide, inter-city high speed passenger train system ("HST system") to serve a mainline route between San Francisco and Los

1

1  Angeles, as well as other major California cities along or connecting with the mainline

2  route.  The Authority is governed by a seven member Board of Directors (hereinafter

3  "the Board").  The Authority, its staff, and contractors and consultants working under

4  its control and direction prepared and certified a joint environmental document titled

5  the Final Program Environmental Impact Report/Environmental Impact Statement

6  (hereinafter "Program EIR/EIS").  In 2005, this joint environmental document was

7  approved by both the Authority and the Federal Railroad Authority granting final

8  approval for the High-Speed Rail project ("HSR project").

9       7.    Defendant Roelof van Ark is the Chief Executive Officer of the

10  Authority.

*BACKGROUND*

12       8.    In June 2000, the Authority adopted the final business plan for the HSR

13  project describing an economically viable HST system over 700 miles long (1,127

14  kilometers).  The HST system would be capable of speeds in excess of 200 miles per

15  hour (mph) and would travel on a mostly dedicated system with fully grade-

16  separated tracks with state-of-the-art safety, signaling, and automated train control

17  systems.  It would connect and serve the major metropolitan areas of California,

18  extending from Sacramento and the San Francisco Bay Area through the Central

19  Valley to Los Angeles and San Diego.

20       A.    *Programmatic Environmental Review.*

21       9.    In the early 2000's, the Authority and the Federal Railroad

22  Administration ("FRA") undertook the first phase of the environmental review

23  process for the HSR project to comply with the National Environmental Policy Act

24  ("NEPA") and the California Environmental Quality Act ("CEQA").  The Authority

25  and FRA jointly developed a programmatic EIR/EIS for the HSR project (the

26  Program EIR/EIS, paragraph 6).  As part of this joint programmatic EIR/EIS process

27  they considered alternatives to the HST system, such as improvements to highways

28  and airports, and different conceptually defined HST corridor alignment and station

2

1   options, including two alignments down the I-5 corridor between Bakersfield and

2   Los Angeles. The two alignments that were examined down the I-5 corridor were

3   alternatives to the Antelope Valley/Palmdale alignment. Program EIR/EIS Chapter

4   2, and Chapter 6, pp. 6-47 to 6-54. Station options considered between Bakersfield

5   and Los Angeles included the Palmdale Transportation Center, the Sylmar

6   Metrolink, Burbank Metrolink Media City and the Burbank Airport. Program

7   EIR/EIS pp. 6-57 to 6-58.

8          10.    The Authority and FRA completed the Program EIR/EIS for the

9   California High-Speed Train Project in 2005. The final Program EIR/EIS is found

10  at http://www.cahighspeedrail.ca.gov/final_pgrm_eireisreport_vol1.aspx. In

11  November 2005, the Authority adopted Resolution No. 05-01 and the FRA adopted

12  a Record of Decision ("ROD") which: (a) approved and selected the preferred high-

13  speed train alternative analyzed in the Program EIR/EIS; (b) eliminated corridors,

14  alignments and station options evaluated in the Program EIR/EIS from further

15  consideration; and (c) approved the preferred alternative identified in the Program

16  EIR/EIS, including the identified conceptual corridor, alignment and station options,

17  for further project-level study and environmental review. Resolution No. 05-01 and

18  the ROD are attached hereto as Exhibits A and B.

19         11.    The Program EIR/EIS specifically defines a conceptual corridor as a

20  geographic belt or band that follows the general route of a transportation facility

21  such as a highway or railroad (Program EIR/EIS, p. 13-3) and defines alignments as

22  the horizontal and vertical routes of a transportation corridor or path (Program

23  EIR/EIS, p. 13-1). The Program EIR/EIS evaluated numerous conceptual corridors

24  and alignments as well as station location options. Most were rejected. One

25  corridor and alignment option considered and rejected in the Program EIR/EIS was

26  a route from Bakersfield to Los Angeles following the I-5 through Santa Clarita

27  (hereinafter "I-5 Route" or "the Grapevine Route").

28  ///

3

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

12.     The Program EIR/EIS ultimately selected a specific corridor, specific alignment and specific station location options for further consideration and refinement in the tiered project-level environmental reviews to be completed at the next phase of the process.  Project-level environmental review must be completed before construction may commence.  *See* Exhibit A, Program Resolution No. 05-01, p. 020.  Various factors were considered by the Authority and the FRA in identifying potential station stops, including speed, cost, local access times, potential connections with other modes of transportation, ridership potential, and the distribution of population and major destinations along the route.  The Authority and the FRA selected as preferred station sites along the route multi-modal transportation hubs that would provide links with local and regional transit, airports and highways.

13.     The Program EIR/EIS determined that connection with the Palmdale Airport/Transportation Center would maximize opportunities for intermodal connectivity because it would be at or near (with the opportunity for convenient shuttle or people-mover service) the Palmdale Airport, directly link with Metrolink service, and be a hub for local bus services.  A station site in Palmdale was selected and it was noted that such a stop would also provide linkage opportunities with the proposed Desert Xpress project, a high-speed rail transportation project designed to connect Southern California to Southern Nevada/Las Vegas.  *See* Program EIR/EIS, p. 6A-19.  The I-5 Route was rejected in part because it failed to meet basic project objectives in maximizing intermodal opportunities, maximizing connectivity and accessibility, and providing transit connections and multi-modal stations.  *See* ROD, Exhibit B, p. 030.

14.     The Program EIR/EIS identified the SR-58/Soledad Canyon Corridor that runs through Palmdale as the preferred route between Bakersfield and Los Angeles, concluding that "due to its more gentle gradient, geology, topology and other features, the SR-58/Soledad Canyon Corridor offers greater opportunities for

1  using potential HST alignment variations, particularly through the mountainous

2  areas of the corridor, to avoid impacts to environmental resources.  In contrast, the

3  more challenging terrain of the I-5 Corridor greatly limits the ability to avoid

4  sensitive resources and seismic constraints.  The alignment optimization system

5  (Quantum) that was utilized to identify and evaluate approximately 12 million

6  alignment options for each mountain crossing could only find one practicable

7  alignment option through the Tehachapi Mountains for the I-5 Corridor.  Program

8  EIR/EIS, p. 6A-18.

9      15.   The Program EIR/EIS selected a preferred alignment and preferred

10  station options ("the Preferred Alternative") for all of the sections of the HSR

11  project except the Bay Area to the Central Valley section for which a separate

12  program EIR/EIS was prepared in 2008.  Two sections of the Preferred Alternative

13  are identified as "Bakersfield-Sylmar" and "Sylmar-Los Angeles."

14      16.   The Program EIR/EIS concludes "[t]he alignment through the SR-

15  58/Soledad Canyon Corridor (Antelope Valley) with an HST station at Palmdale is

16  the preferred option for crossing the Tehachapi Mountains between the Central

17  Valley and Southern California." Program EIR/EIS, p. 6-18.  It identifies the "SR-

18  58/Soledad Canyon Corridor (Antelope Valley)" as the preferred alignment and

19  "Palmdale/Antelope Valley: Palmdale Airport/Transportation Center" as the

20  preferred station location for this segment. *See* Program EIR/EIS Chapter 6A,

21  Resolution No. 05-01, Exhibit A and ROD, Exhibit B.

22      17.   The Authority and FRA determined that the Preferred Alternative is

23  environmentally preferable under NEPA and is the environmentally superior

24  alternative under CEQA.

25      18.   The Authority and FRA declared in the Program EIR/EIS that

26  alignment and station options that were not identified as preferred, such as the I-5

27  Route, will **not** be further investigated at the project level environmental analysis.

28  Program EIR/EIS, p. 6A-1.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

19.    The Authority's website can be found at http://www.cahighspeedrail.ca.gov.  The site contains an interactive map on the home page which allows a visitor to explore the alignment/route and each particular segment including segments entitled "Bakersfield-Palmdale" and "Palmdale-Los Angeles."  A copy of the maps are attached to this Complaint as Exhibits C and D.

B.    *Proposition 1A.*

20.    In 2008, the citizens of California adopted Proposition 1A which authorized the expenditure of $9 billion in bond funds to complete project level environmental analysis, engineering and construction of the HSR project consistent with the Authority's Program EIR/EIS as well as a program EIR/EIS for the Bay Area to Central Valley portion of the HSR project dated July 9, 2008.

21.    Proposition 1A limits use of the bond funds to the corridor identified and adopted by the Authority in May 2007 as "Phase 1" of the HSR project. *See* Proposition 1A, Exhibit E, Sections 2704(f) and 2704.04(b)(2).  The Phase 1 corridor runs from Anaheim to San Francisco and passes through Palmdale. *See* Maps of Phase 1, Exhibits C and D.  The I-5 Route is not included within the Phase 1 corridor.

C.    *The Federal Grant.*

22.    In September 2010, the FRA issued a Grant/Cooperative Agreement to the Authority for Phase 1 of the HST program.  Grant/Cooperative Agreement No. FR-HSR-0009-10-01-00 (hereinafter "the Federal Grant"), attached hereto as Exhibit F.  The Federal Grant provides funding pursuant to the American Recovery and Reinvestment Act of 2009 ("ARRA") for preliminary engineering and project level environmental analysis of the Phase 1 corridor under NEPA and CEQA. *See* Federal Grant, Exhibit F and the Authority's application for grant funds, submitted to the FRA in October 2009, which specifically delineates the selected corridor, alignment and proposed stations, attached to this Complaint as Exhibit G.

///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

23.    The Federal Grant provides funds for a maximum of 50% of the cost of the "approved Project," which is described and defined in Grant Attachment 3 - Statement of Work.  The Federal Grant estimates the total cost of the Project to be $388,000,000; therefore, it authorizes funding in the amount of $194,000,000 and requires the Authority to provide alternative funding for an equal or greater amount. The Federal Grant acknowledges that the Authority has obtained matching funds via Proposition 1A.

24.    The Federal Grant was amended on or about December 2010. *See* Amendment No. 1 to the Federal Grant (hereinafter "Federal Amended Grant") attached hereto as Exhibit H.  The Federal Amended Grant deletes in its entirety Attachment 3, the original Statement of Work, and replaces it in its entirety with a new Attachment 3 - Statement of Work (hereinafter "Statement of Work").

25.    The Background section in the Statement of Work explains that in 2008, the California State Legislature adopted AB 3034 finding "it imperative that the state proceed **quickly** to construct a . . . high-speed passenger train system to serve the major metropolitan areas . . . .  It is the intent of the Legislature that the entire high-speed train system shall be constructed as quickly as possible . . . and that it be completed no later than 2020 . . . ." Emphasis added.  This section also acknowledges that the same year, 2008, California voters passed Proposition 1A, approving $9 billion in bonds to support construction of a high-speed train along a route specifically identified in the bond measure.

26.    The Background section further explains that the Authority and FRA completed and certified the Program EIR/EIS and other program level environmental documents in 2005, 2008 and 2010, and that the Authority and FRA are currently preparing project level EIR/EIS documents for the following individual sections of the HSR project included in Phase 1:

    a.    San Francisco-San Jose (50 miles),

    b.    San Jose-Merced Wye (120 miles),

7
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1     c.     Merced-Fresno (60 miles),

2     d.     Fresno-Bakersfield (115 miles),

3     e.     Bakersfield-Palmdale (85 miles),

4     f.     Palmdale-Los Angeles (60 miles) and

5     g.     Los Angeles-Anaheim (30 miles).

6 (hereinafter "the Approved Sections")

7     27.     The General Objective identified in the Statement of Work provides

8 that the Authority shall complete preliminary engineering and environmental

9 documentation to support final environmental decisions for each of the seven

10 Approved Sections identified in Phase 1, including Bakersfield-Palmdale and

11 Palmdale-Los Angeles.

12     28.     The Description of Work in the Statement of Work explains that "[t]he

13 Authority has seven Project-level EIR/EIS studies under way for Phase 1," one for

14 each Approved Section of Phase 1.  The Statement of Work authorizes the Authority

15 to carry out the necessary steps for completion of the seven project-level studies and

16 describes the specific activities the Authority must undertake to complete these

17 documents.

18     29.     The Description of Work in the Statement of Work further explains that

19 notices of intent (NOI)/notices of preparation (NOP) have already been prepared

20 and scoping completed for the seven Project-level EIR/EISs; therefore, such notices

21 and scoping are not part of the Statement of Work.

22     30.     The Description of Work describes the Alternatives Analysis

23 authorized by the Statement of Work as follows:  "The Authority, with FRA, will

24 conduct an Alternatives Analysis (AA) **in each Approved Section** to help identify

25 the alignments and station locations to carry forward in environmental review.  The

26 AA process will define potentially reasonable and feasible project alternatives,

27 design options, and station locations that can meet the NEPA Purpose and Need and

28 CEQA project objectives while avoiding or minimizing environmental impacts.

8

1 (The AA process is underway **in all seven Approved Sections** and activities

2 undertaken in developing the alternatives analysis after the effective date of this

3 Agreement are potentially eligible under this Statement of Work.)" Emphasis added.

4      31.    The Statement of Work does not authorize development of alternatives

5 *to replace* any of the seven Approved Sections, only the development of alternatives

6 *within* the seven Approved Sections.  As to the Bakersfield-Palmdale and Palmdale-

7 Los Angeles Approved Sections – the Grapevine alternative is not an alternative

8 *within* the defined Approved Sections, it would be an alternative *to* the Approved

9 Sections.  Therefore, a study of the Grapevine alternative is not within the activities

10 authorized in the Statement of Work.

11      32.    Additional Environmental Review tasks identified to be completed in

12 the Description of Work portion of the Statement of Work include Administrative

13 Draft EIR/EISs, Draft EIR/EISs and Final EIR/EISs for each of the seven Approved

14 Sections identified as part of Phase 1, including Bakersfield-Palmdale and

15 Palmdale-Los Angeles.

16      33.    The Description of Work in the Statement of Work further mandates

17 that the Authority, in coordination with the FRA, shall complete preliminary

18 engineering for the seven Phase 1 Approved Sections sufficient to determine the

19 Project footprint.

20      34.    The Description of Work in the Statement of Work also requires the

21 Authority to provide support for acquisition of rights-of-way ("ROW) for all seven

22 Phase 1 Approved Sections by identifying parcels, documenting parcel requirements

23 and developing a relocation plan for ROW acquisitions.  In addition, the Description

24 of Work in the Statement of Work requires that the Authority shall prepare and

25 deliver station area plans, ROW acquisition plans, ROW acquisition documents,

26 ridership forecasts and construction contract documents ready for bid for each Phase

27 1 Approved Section, including Bakersfield-Palmdale and Palmdale-Los Angeles.

28 ///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

35.   The Project Schedule in the Statement of Work provides that environmental review for five Phase 1 Approved Sections, including Bakersfield-Palmdale and Palmdale-Los Angeles, is scheduled to be completed by 2012 with these five Approved Sections ready for construction to be started by 2013.  The Authority was required to submit to the FRA within 30 days of execution of the Federal Amended Grant a summary and detailed schedules outlining milestones for the deliverables required under the Statement of Work.

36.   The detailed description of the Scope of Work for the Regional Management Team and Regional Consultants, Exhibit 1 to the Statement of Work, includes project management, meetings and engineering and environmental review for the Los Angeles-Palmdale and Palmdale-Bakersfield Approved Sections.  Contracts issued to Regional Consultants for these two Approved Sections are attached to this Complaint as Exhibits I and J.

37.   The Regional Consultant Scope of Work and Deliverables, Exhibit 2 to the Statement of Work, states that the focus of the Regional Consultant's work will be on the selected corridor identified in the Program EIR/EIS and the FRA's ROD (both November 2005).  The selected corridor identified in the Program EIR/EIS and the FRA's Record of Decision includes the seven Approved Sections identified in the Statement of Work.  The I-5 Route or the Grapevine alignment between Bakersfield and Los Angeles is not within the selected corridor.

38.   The Regional Consultant Scope of Work and Deliverables also states that the Regional Consultant's work shall be consistent with and build upon the Authority's previous work, including the Program EIR/EIS and the technical reports that support that document.  It further mandates that Regional Consultants shall not duplicate work previously done by the Authority.

39.   The Federal Grant defines "Allowable Costs" as those costs that conform with the Project description, the Statement of Work, and the Approved Project Budget and all other terms of the Federal Grant as amended.  *See* Exhibit F,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Federal Grant, p. 094.  The funds provided under the Federal Grant (as amended) may only be used for the activities described in the Statement of Work.  The Statement of Work explains that any expenses incurred by the Authority or its agents for activities that are not described in the Statement of Work shall not be reimbursable under the Federal Grant.

40.    The Federal Amended Grant provides that misuse of ARRA funds authorized under the Federal Amended Grant and/or claims for reimbursement of funds under the Federal Amended Grant for activities not within the Scope of Work will be subject to criminal and civil enforcement under the False Claims Act.  *See* Exhibit H, Federal Amended Grant, Attachment 1B, Section 3, p. 188.

D.    *The Authority's Reconsideration of the Rejected I-5 Route.*

41.    In May 2011, the Authority decided to reconsider the previously rejected I-5 Route as an alternative to the Bakersfield-Palmdale and Palmdale-Los Angeles Approved Sections of the Preferred Alignment.  As part of this reconsideration, the Authority is currently undertaking a new study of the I-5 Route (also referred to as the "I-5 Grapevine alignment" between Bakersfield, CA and Los Angeles, CA [hereinafter "the I-5 Study"]).  The I-5 Route was previously studied and rejected as part of the Program EIR/EIS.

42.    The Authority has estimated the cost for the I-5 Study at $700,000.  In testimony before the California Senate Budget and Fiscal Review Subcommittee on May 5, 2011, Mr. van Ark, Chief Executive Officer of the Authority, stated that the I-5 Study will be financed from federal ARRA funds (Amended Grant funds), specifically from the budget for regional consultants, and state Proposition 1A funds, split 50/50.

43.    The ARRA funds provided to the Authority for the HSR project may only be used for the express purposes and tasks designated in the Federal Grant and Amended Grant.  The I-5 Study is not within the delineated purposes and tasks authorized by the Federal Grant or Amended Grant and is specifically excluded

11

1  from the activities authorized by the Federal Amended Grant. Therefore, the

2  Authority's use of these funds for the I-5 Study is a misuse of the Federal Amended

3  Grant funds.

4      44.    According to the Authority, the purpose of the I-5 Study is to consider

5  an alternative to a portion of the corridor and alignment selected as the Preferred

6  Alternative in the Program EIR/EIS. If this alternative route is selected to replace

7  all or part of the Approved Sections from Bakersfield-Palmdale and/or Palmdale-

8  Los Angeles, it would significantly change the HSR project. A change of this

9  magnitude to the HSR project is beyond the scope of project-level analysis of the

10  seven Approved Sections of Phase 1. Such a significant change to the HSR project

11  cannot move forward without reopening the Program EIR/EIS in the form of

12  revisions or supplementation to the approved Program EIR/EIS.

13      45.    On June 2, 2011, the City sent a letter to Mr. van Ark, Chief Executive

14  Officer of the Authority, clearly calling out the City's concerns that the I-5 Study is

15  outside the scope of tasks authorized by the Federal Grants; therefore, using such

16  funds improperly could result in the loss of federal funding for the HSR project and

17  possibly the demise of the HSR project altogether. *See* Letter from City of Palmdale

18  to Roelef van Ark, Chief Executive Officer of the Authority, dated June 2, 2011,

19  attached to this Complaint as Exhibit K. The City also informed Mr. van Ark that

20  the state bond funds authorized for the HSR project under Proposition 1A mandated

21  their use to construct a HST system along the route through Palmdale identified as

22  the Phase 1. Misusing the state bond funds puts those funds at risk as well.

23      46.    In its June 2, 2011 letter, the City also explained that Antelope Valley

24  communities had made significant improvements to local infrastructure in

25  anticipation of the HSR project station in Palmdale, while local businesses and

26  industries have made investment decisions in anticipation of the future Palmdale

27  HSR station. The City also reminded Mr. van Ark that a study prepared in 2003 and

28  relied on by the Authority in its conclusions in the Program EIR/EIS had already

1   analyzed the relative risks and benefits between the I-5 Route and the Antelope

2   Valley/Palmdale alignment and found the Palmdale alignment to be superior.

3        47.    Deputy Attorney General Amy Winn of the California Attorney

4   General's office responded on behalf of the Authority to the City's letter via a letter

5   dated June 17, 2011, attached to this Complaint as Exhibit L.  The response

6   summarily dismisses the concerns raised in the City's letter regarding misuse of the

7   federal grant funds and asserts that the Authority will proceed with the I-5 Study

8   using the federal funds provided through the Federal Amended Grant.

*CLAIMS*

*COUNT I*

*Misuse of Federal Grant Funds*

*(Against all Defendants)*

13       48.    The City re-alleges and incorporates herein paragraphs 1-47 as though

14   set forth in full.

15       49.    Other states awarded ARRA funds for HSR projects have been forced

16   to turn back those funds for failing to meet deadlines or satisfy other specific

17   requirements in the authorizing grants.

18       50.    The I-5 Study is not within the specific detailed activities authorized

19   under the Federal Amended Grant; therefore, the ARRA funds may not be used for

20   the I-5 Study.

21       51.    Misuse of the federal funds for activities not authorized under the

22   Federal Amended Grant will result in the FRA's rejection of claims for payment for

23   those activities or the rescission of the funds.

24       52.    If the federal grant funds (valued at nearly $4 billion) are rescinded, the

25   entire HSR project will be in jeopardy.  State funding under Proposition 1A is

26   conditioned on matching funds from private or other governmental sources such as

27   the federal government.  Without the federal funds, state bond funds will not be

28   available for the project leaving the project with no funding sources.

13

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

53.   The Authority has no mechanism to pay for the I-5 Study if it cannot use federal funds provided through the Federal Amended Grant or state bond funds awarded under Proposition 1A.

54.   All Californians, including the citizens of Palmdale and the City of Palmdale, a city designated as a station stop hub between two Approved Segments along the Preferred Alignment of the HSR project, are intended beneficiaries of the Federal Amended Grant awarding federal funding to the Authority for Phase 1 of the HSR project.

55.   The State of California Accountability office has determined that it is crucial for the economy of the state to ensure that ARRA funds are spent properly and efficiently. *See* http://www.recovery.ca.gov/html/accountability/accountability.shtml.

56.   Unless the Authority is permanently enjoined from attempting to use the federal funds awarded under the Federal Amended Grant for the I-5 Study, the City and its citizens, and the citizens of California, will be irreparably harmed because the HSR project will be placed in jeopardy.  The HSR project is intended to benefit all residents of California by providing a reliable, economical and timely transportation option for travelling within the state; therefore, it would be difficult for an individual citizen to establish the necessary harm to challenge the Authority's actions.  Damages are inadequate and unavailable to remedy the harm the City, its citizens and the citizens of California will suffer if critical federal funding for the HSR project is lost and the HSR project is abandoned.

57.   The City does not have a plain, speedy or adequate remedy at law.

*COUNT II*

*Misuse of Proposition 1A Bond Funds*

*(Against all Defendants)*

58.   The City re-alleges and incorporates herein paragraphs 1-57 as though set forth in full.

///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

59.     Proposition 1A authorizes the Authority to utilize $9 billion in bond funds for planning, engineering and capital costs associated with Phase 1 of the HSR project. Phase 1 includes the Approved Sections of Bakersfield-Palmdale and Palmdale-Los Angeles.

60.     The I-5 Study does not involve planning, engineering or capital costs associated with Phase 1 of the HSR project. Rather, it is a study of an alternative to the Phase 1 alignment.

61.     The I-5 Study is not within the scope of activities authorized under Proposition 1A.

62.     Proposition 1A requires bond funds to be matched by funding from other sources for the HSR project. Therefore, Proposition 1A funds may not be used if matching funds are not available.

63.     The Authority has no mechanism to pay for the I-5 Study if it cannot use federal funds provided through the Federal Amended Grant or state bond funds awarded under Proposition 1A.

64.     Unless the Authority is permanently enjoined from improperly attempting to use Proposition 1A bond funds for the I-5 Study, the City and the citizens of California will be irreparably harmed because the HSR project will be placed in jeopardy. The HSR project is intended to benefit all residents of California by providing a reliable, economical and timely transportation option for travelling within the state; therefore, it would be difficult for an individual citizen to establish the necessary harm to challenge the Authority's actions. Damages are inadequate and unavailable to remedy the harm the City, its citizens and the citizens of California will suffer if critical funding for the HSR project is lost and the HSR project is abandoned.

65.     The City does not have a plain, speedy or adequate remedy at law.

///

///

15

*RELIEF SOUGHT*

WHEREFORE, the City of Palmdale respectfully requests that this Court:

1.      Declare that the federal ARRA funds provided to the Authority under the Federal Grant and/or the Federal Amended Grant cannot be used to fund the I-5 Study pursuant to the terms of the Federal Amended Grant;

2.      Declare that state bond funds authorized for the HSR project under Proposition 1A cannot be used to fund the I-5 Study pursuant to the express limitations placed on those funds in the legislation;

3.      Declare that use of the federal ARRA funds provided to the Authority under the Federal Grant and the Federal Amended Grant for the I-5 Study would be a misuse of ARRA funds;

4.      Permanently enjoin the Authority and Mr. van Ark, its Chief Executive Officer, from utilizing ARRA funds provided to the Authority under the Federal Grant and/or the Federal Amended Grant for the I-5 Study;

5.      Permanently enjoin Authority and Mr. van Ark, its Chief Executive Officer, from utilizing Proposition 1A bond funds for the I-5 Study;

6.      Award attorneys' fees and costs; and

7.      Such additional relief as the Court deems just and proper.

DATED: July 6 , 2011          MEYERS, NAVE, RIBACK, SILVER & WILSON

By: _____
    DEBORAH J. FOX
    Attorneys for Plaintiff
    CITY OF PALMDALE

1664573.1
1206.017

16
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## DEMAND FOR JURY TRIAL

The City of Palmdale hereby demands a jury trial in this matter.

DATED: July 6, 2011                    MEYERS, NAVE, RIBACK, SILVER & WILSON


By: _Deborah J. Fox_____
        DEBORAH J. FOX
        Attorneys for Plaintiff
        CITY OF PALMDALE

17
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

TABLE OF EXHIBITS

EXHIBIT A    California High Speed Rail Authority Resolution No. 05-01,
Certification of Final Program Environmental Impact Report and
Approval of High Speed Train System Program for California
dated November 2, 2005

EXHIBIT B    U.S. Department of Transportation, Federal Railroad
Administration, Record of Decision, California High-Speed
Train System, November 18, 2005

EXHIBIT C    Map, California High-Speed Rail Preferred Alignments and
Stations Statewide

EXHIBIT D    Map, California High-Speed Rail Preferred Alignments and
Stations – South

EXHIBIT E    California General Election, Ballot for Proposition 1A,
November 4, 2008 election

EXHIBIT F    U.S. Department of Transportation Federal Railroad
Administration, Grant/Cooperative Agreement, California High-
Speed Rail Authority, Phase 1 of California High Speed Train
Program – PE/NEPA/CEQA, September 22, 2010 (Agreement
No. FR-HSR 0009-10-01-00)

EXHIBIT G    Application for Federal Grant Funds submitted to the Federal
Railroad Administration on October 1, 2009, for Phase 1
(preliminary engineering and project level CEQA and NEPA
compliance) of the California High-Speed Rail Project

EXHIBIT H    Grant/Cooperative Agreement, California High-Speed Rail
Authority, California High Speed Train Program ARRA Grant,
Amendment No. 1, dated December 22, 2010 (Agreement No.
FR-HSR-0009-10-01-01)

i

| | |
|---|---|
| EXHIBIT I | Regional Consultant Agreement between California High-Speed Rail Authority and Hatch Mott MacDonald, URS & ARUP, a Joint Venture, effective December 29, 2006 through June 30, 2012 for $74,288,000 (Agreement No. HSR06-0004) |
| EXHIBIT J | Regional Consultant Agreement between California High-Speed Rail Authority and URS, Hatch Mott MacDonald & ARUP, a Joint Venture, effective February 12, 2006 through June 30, 2012 for $119,985,612 (Agreement No. HSR06-0003) |
| EXHIBIT K | Letter dated June 2, 2011 to Roelof van Ark, Chief Executive Officer, California High-Speed Rail Authority from Wm. Matthew Ditzhazy, City Attorney, City of Palmdale, re Proposal of California High Speed Rail Authority to Undertake a Conceptual Study of the I-5 Grapevine Route from Bakersfield to Los Angeles as an Alternative to the Bakersfield-Palmdale and Palmdale-Los Angeles Segments of the Route Selected in the Final Program EIR/EIS |
| EXHIBIT L | Letter dated June 17, 2011 to Dawn McIntosh, Meyers Nave from Amy J. Winn, Deputy Attorney General in response to the City of Palmdale's June 2, 2011 Letter |

ii

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF