1    KAMALA D. HARRIS, State Bar No. 146672
     Attorney General of California
2    WILLIAM L. CARTER, State Bar No. 59215
     Supervising Deputy Attorney General
3    AMY J. WINN, State Bar No. 142421
     Deputy Attorney General
4      1300 I Street, Suite 125
       P.O. Box 944255
5      Sacramento, CA 94244-2550
       Telephone:  (916) 322-1673
6      Fax:  (916) 327-2247
       E-mail:  Amy.Winn@doj.ca.gov
7    *Attorneys for Defendants California High-Speed*
     *Rail Authority and Chief Executive Officer Roelof*
8    *van Ark*

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13   **CITY OF PALMDALE,**                      2:11-CV-01808-GEB-GGH

14                              Plaintiff,

15           v.                                 **STATE DEFENDANTS' MEMORANDUM
                                                OF POINTS AND AUTHORITIES IN**
16                                              **OPPOSITION TO PRELIMINARY
                                                INJUNCTION**
17   **CALIFORNIA HIGH-SPEED RAIL
     AUTHORITY, A PUBLIC AGENCY;**
18   **ROELOF VAN ARK, CHIEF EXECUTIVE**         Date:        October 3, 2011
     **OFFICER; AND DOES 1-10, INCLUSIVE,**      Time:        10:00 a.m.
19                                              Dept:        10
                               Defendants.      Trial Date   N/A
20                                              Action Filed:  July 6, 2011

21                                              Originally filed in the United States District
                                                Court for the Central District of California,
22                                              Case No. LACV11-5545 R (MANx)/
                                                Transfer Order dated July 8, 2011
23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3  Introduction And Summary Of Argument .................................................................... 1

4  Argument ..................................................................................................................... 2

    I.    Standard Of Review For Preliminary Injunction ..................................... 2

5      II.   There Is No Likelihood Of The City Prevailing On The Merits............................ 2

6           A.   Suit Is Barred In Its Entirety By The Eleventh Amendment ..................... 2

7               1.   The Authority Is An Arm Of The State and Has Not Consented To Suit....................................................................... 2

8               2.   Plaintiff Has Failed To Meet The Requirements For Suit Against Chief Executive Officer Van Ark Under *Ex Parte*

9                    *Young* ...................................................................................... 3

10           B.   Plaintiff Has Failed to Meet Its Burden To Establish Federal Subject Matter Jurisdiction ....................................................... 3

11               1.   The City's Contention That All Lawsuits Involving The Interpretation Of Federal Contracts Trigger Application Of

12                    Federal Law And Thus Invoke Federal Subject Matter Jurisdiction Is Not Supported By Good Authority......................... 3

13               2.   There Is No Federal Subject Matter Jurisdiction Because The City Has Failed To Demonstrate Any Conflict Between

14                    The Application Of State Law And An Identifiable Federal Interest............................................................................ 5

15               3.   The City Is Not An Intended Third Party Beneficiary Of The Grant Agreement And Therefore Lacks Standing To

16                    Invoke Federal Subject Matter Jurisdiction Under That

17                    Contract ................................................................................... 6

18           C.   The Complaint Fails To State A Claim For Breach Of The Grant Agreement As A Matter Of Law ............................................... 7

19               1.   The City's Interpretation Of The Grant Agreement Conflicts With The Environmental Laws ....................................... 7

20               2.   The Parties To The Grant Agreement Have Amended The Agreement To Make Clear That It Does Not Foreclose

21                    Analysis Of Additional Alternative Routes .................................. 8

22           D.   The Complaint Does Not Satisfy The Constitutional Case Or Controversy Requirement ......................................................... 9

23           E.   The Complaint Fails To State any Legally Cognizable Claim And Is An Improper Attempt To End-Run The Environmental Laws ................. 9

24           F.   The Complaint Fails To State A Claim For Violation Of Proposition 1A ......................................................................... 10

25

26      III.  The City Of Palmdale Has Alleged No Legally Cognizable Harm ..................... 12

    IV.  The Authority Will Suffer Irreparable Harm If The Injunction Is Granted;

27          The Balance Of Equities Weighs In The Authority's Favor And An Injunction Is Not In The Public Interest................................................. 13

28

i

**TABLE OF CONTENTS**
(continued)

Page

1.  The Authority Will Suffer Irreparable Harm If The
    Injunction Is Granted And The Balance Of Equities Weighs
    In The Authority's Favor ........................................................ 13

2.  Granting An Injunction Would Not Be In The Public
    Interest ................................................................................... 14

V.  The City Must Post A Bond In The Amount Of $100 Million Before Any
    Injunction Order Is Issued .................................................................... 15

Conclusion ................................................................................................................ 15

1

**TABLE OF AUTHORITIES**

2

**Page**

3      CASES

4      *Astra USA, Inc. v. Santa Clara County California*
5           131 S. Ct. 1342 (2011) ........................................................................................... 4, 5

6      *Beverly v. Network Solutions, Inc.*
            1998 WL 320829 (N.D. Cal. 1998) ........................................................................ 6
7
       *Burke v. Barnes*
8           479 U.S. 361 (1987) ................................................................................................ 9

9      *California Water Impact Network v. Newhall County Water Dist.*
            161 Cal. App. 4th 1464 (Cal. App. 2008) ............................................................. 10
10
       *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*
11          527 U.S. 666 (1999) ................................................................................................ 2

12
       *County of Santa Clara v. Astra USA, Inc.*
13          588 F.3d 1237 (9th Cir. 2009) ............................................................................. 4, 5

14     *Department of Transportation v. Public Citizen*
            541 U.S. 752 (2004) ................................................................................................ 7
15
       *Edelman v. Jordan*
16          415 U.S. 651 (1974) ................................................................................................ 3

17     *Empire Healthchoice Assurance, Inc. v. McVeigh*
            547 U.S. 677 (2006) ................................................................................................ 5
18
       *Ex Parte Young*
19          209 U.S. 123 (1908) ................................................................................................ 3

20
       *Ford v. Reynolds*
21          316 F.3d 351 (2nd Cir. 2003) .............................................................................. 13

22
       *Hill v. Blind Industries and Services of Maryland*
23          179 F.3d 754 (9th Cir. 1999) .................................................................................. 2

24     *Idaho v. Coeur d'Alene Tribe of Idaho*
            521 U.S. 261 (1997) ................................................................................................ 3
25
       *Imagineering, Inc. v. Kiewit Pacific Company*
26          976 F.2d 1303 (9th Cir. 1992) ............................................................................. 11

27     *In re Excel Innovations, Inc.*
28          502 F.3d 1086 (9th Cir. 2007) ............................................................................. 12

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Kartman v. State Mutual Automobile Insurance Company*
634 F.3d 883 (7th Cir. 2011)........................................................................... 13

4

*Klamath Water Users Protective Association v. Patterson*
204 F.3d 1206 (9th Cir. 2000)........................................................................... 6

5

6

*Kleppe v. Sierra Club*
427 U.S. 390 (1976) ........................................................................................... 8

7

8

*Marquette v. OneWest Bank Group LLC*
2011 U.S. Dist. Lexis 80736 (C.D. Cal. July 22, 2011).......................... 4

9

*Miree v. DeKalb County, Georgia*
433 U.S. 25 (1977)............................................................................................. 5

10

11

*Mitchell v. Los Angeles Community College Dist.*
861 F.2d 198 (9th Cir. 1988).......................................................................... 2

12

13

*Monroe County Conservation Council, Inc. v. Volpe*
472 F.2d 693 (2nd Cir. 1972) ....................................................................... 10

14

*Nafso v. Wells Fargo Bank, NA*
2011 WL 1575372 (E.D. Mich. April 26, 2011)....................................... 5

15

16

*National Resources Defense Council, Inc. v. Administrator, Energy Research and
Development Administration*
451 F. Supp. 1245 (D.D.C. 1978) ............................................................... 10

17

18

*National Resources Defense Council v. United States Nuclear Energy Regulatory
Commission*
606 F.2d 1261 (D.C. Cir. 1979) ........................................................... 10, 14

19

20

21

*North Hartland, L.L.C. v. United States*
78 Fed. Cl. 172 (Fed. Cl. 2007)..................................................................... 6

22

*Pennhurst State Sch. & Hosp v. Halderman*
465 U.S. 89 (1984)............................................................................................. 2

23

24

*S.D. Meyers v. City and County of San Francisco*
253 F.3d 461 (9th Cir. 2001)........................................................................... 9

25

*Smith v. Cent. Ariz. Water Conservation Dist.*
418 F.3d 1028 (9th Cir. 2005)........................................................................ 4

26

27

*State of Utah v. Babbitt*
137 F.3d 1193 (10th Cir. 1998)..................................................................... 10

28

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2
<u>Page</u>

3

*Stevens v. Geduldig*
    42 Cal.3d 24 (Cal. 1986) ........................................................................................ 12

4

*United States v. Butler Hughes Helicopters, Inc.*
5
    71 F.3d 321 (9th Circuit 1995).................................................................................. 10

6

*Verizon Maryland Inc. v. Public Service Commission of Maryland*
7
    535 U.S. 635 (2002) ................................................................................................... 3

8

*Weinberger v. Romero-Barcelo*
    456 U.S. 305 (1982) ................................................................................................... 2

9

10

*Winter v. Natural Resources Defense Council*
    555 U.S. 7 (2008) ....................................................................................................... 2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State Defendants' Memorandum in Opposition to Motion for Preliminary Injunction (2:11-CV-01808-GEB-GGH)

# TABLE OF AUTHORITIES
## (continued)

Page

**FEDERAL LAW**

5 U.S.C. § 704 .................................................................................................... 10

28 U.S.C. § 1367(c) ........................................................................................... 10

31 U.S.C. § 3729(a)(1)(A) .................................................................................. 9

42 U.S.C. § 4332(C)(iii) ..................................................................................... 7

**STATE LAW**

California Streets and Highways Code
    § 2704.04(b)(2) .......................................................................................... 12
    § 2704.04(b)(3)(G) .................................................................................... 11
    § 2704.06 .................................................................................................... 11
    § 2704.08(a) ............................................................................................... 12
    § 2704.08(c) ............................................................................................... 14

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Amendment XI ....................................................................................... 2, 3

**COURT RULES**

Federal Rule of Civil Procedure
    rule 8(a) ....................................................................................................... 6

Local Rule of Court
    rule 231(c)(6) ............................................................................................. 15

State Defendants' Memorandum in Opposition to Motion for Preliminary Injunction (2:11-CV-01808-GEB-GGH)

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff City of Palmdale ("City") seeks a preliminary injunction to stop the California High-Speed Rail Authority ("Authority") from carrying out an environmental study ("Study or "I-5 Study") evaluating the feasibility of an alternative high-speed train route--a route that does not pass through the City of Palmdale--in its environmental review process. (City of Palmdale's Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities in Support Thereof ["PI Opening Brief"], filed July 19, 2011 [Docket 13], at pp. 1:01-2:12.)[1] Relying solely on the fact that Palmdale is identified, along with several other California cities, within the footprint of the high-speed train system referenced in a grant agreement between the Federal Rail Administration ("FRA") and the Authority ("Grant Agreement"), the City contends that it is an intended third party beneficiary of that agreement. (Complaint, filed July 6, 2011 [Docket 1], at par. 54; Grant Agreement, Ex. F to Complaint [Docket 1/#5] at 115-116 and Exhibit H [Amendment] [Docket 1/#7] at 192-193.)[2] The City argues that any use of federal (or state) funds by the Authority to consider an alignment that does not pass through the City of Palmdale is a breach of the Grant Agreement and constitutes a "misuse" of federal funds. (Complaint at pars. 48-57.)

The City's suit is fatally flawed on any number of levels. There is no likelihood of the City prevailing on the merits and there is no legally cognizable harm that it will suffer if the Authority goes forward with the Study. On the other hand, the harms of imposing an injunction to suppress the Study--and essentially holding the environmental review process hostage--are serious and dramatic. The motion for preliminary injunction must be denied.

---

[1] See also ([Proposed] Order Granting City of Palmdale's Motion for Preliminary Injunction, filed July 19, 2011 [Docket 18], at 1:09-13: "Defendants are hereby immediately enjoined from undertaking any activities in furtherance of a study of an alignment along the I-5 between Bakersfield and Los Angeles ("the I-5 Study") that would be an alternative to the alignment selected as the Preferred Alternative in the Final Programmatic EIR/EIS [Environmental Impact Report/Environmental Impact Statement] for the Proposed California High-Speed Train System dated August 2005." This relief is broader than that sought in the Complaint. (Cf. Complaint at p. 16:01-16.)

[2] See also City of Palmdale's Response to Order to Show Cause ["OSC"] Regarding Federal Subject Matter Jurisdiction ("City SMJ Brief"), filed August 12, 2011 [Docket 27] at pp. 1-3 and 5.

1

1

**ARGUMENT**

2

**I.    STANDARD OF REVIEW FOR PRELIMINARY INJUNCTION**

3      The grant of an injunction is an extraordinary remedy.  *Weinberger v. Romero-Barcelo*,

4 456 U.S. 305, 311 (1982).  This Court has no obligation to issue an injunction even, as is not the

5 case here, where a violation of law is established.  *Id*. at 313.

6      A plaintiff seeking a preliminary injunction must establish that he is likely to succeed
       on the merits, that he is likely to suffer irreparable harm in the absence of preliminary
7      relief, that the balance of equities tips in his favor, and that an injunction is in the
       public interest.

8

9 *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008).  The City has not and

10 cannot meet the standard for issuance of a preliminary injunction.

11 **II.    THERE IS NO LIKELIHOOD OF THE CITY PREVAILING ON THE MERITS**

12      **A.    Suit Is Barred In Its Entirety By The Eleventh Amendment**

13           **1.    The Authority Is An Arm Of The State And Has Not Consented To
                     Suit**

14

15      A suit against a state agency in federal court is considered an "action against the state" that

16 is barred by sovereign immunity when the state agency is considered an "arm of the state."

17 *Pennhurst State Sch. & Hosp v. Halderman*, 465 U.S. 89, 100 (1984).  There is no dispute here

18 that the Authority is an arm of the state.  (Complaint at par. 6.)[3]  *See Mitchell v. Los Angeles*

19 *Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (discussing factors to determine

20 whether an entity qualifies as an arm of the state).

21      "The Eleventh Amendment grants the State a legal power to assert a sovereign immunity

22 defense should it choose to do so."  *Hill v. Blind Industries and Services of Maryland*, 179 F.3d

23 754, 760 (9th Cir. 1999).  There are only two circumstances in which an individual may sue the

24 state in federal court, neither of which is applicable here:  1) where Congress has expressly

25 authorized suit and 2) where the State waives its sovereign immunity.  *College Savings Bank v.*

26 *Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 670 (1999).  Plaintiff

27      _____
            [3] "Defendant High-Speed Rail Authority ("the Authority") was established as an
28 independent state authority pursuant to state legislation in 1996. . ."

2

1   has cited no statute authorizing suit.  Nor can the Authority's participation in a federal funding

2   program (as evidenced by the Grant Agreement) be construed as a general consent to suit in

3   federal court.  *Cf. Edelman v. Jordan*, 415 U.S. 651, 673 (1974) ("[t]he mere fact that a State

4   participates in a program through which the Federal Government provides assistance for the

5   operation by the State of a system of public aid is not sufficient to establish consent on the part of

6   the State to be sued in the federal courts.")

7             **2.      Plaintiff Has Failed To Meet The Requirements For Suit Against
             Chief Executive Officer Van Ark Under *Ex Parte Young***
8

9         The Eleventh Amendment also generally bars suit against a state official, i.e., the

10  Authority's Chief Executive Officer Roelof van Ark, sued in his official capacity.  Under the

11  "fiction" established by *Ex parte Young*, 209 U.S. 123 (1908), suit may sometimes be brought

12  against a state official if the "complaint alleges an ongoing violation of federal law and seeks

13  relief properly characterized as prospective."  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S.

14  261, 296 (1997).  Plaintiff City does not seek damages in this suit for declaratory and injunctive

15  relief.  Even assuming "misuse" of federal funds constituted a violation of federal law,[4] however,

16  the City fails to allege any ongoing violation; the Complaint seeks only to stop the Authority from

17  concluding one specific environmental study.  (Complaint at p. 16.)  *See Verizon Maryland Inc. v.*

18  *Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002) (discussing need to allege

19  ongoing violation of federal law).

20        **B.    Plaintiff Has Failed To Meet Its Burden To Establish Federal Subject
              Matter Jurisdiction[5]**
21

22            **1.      The City's Contention That All Lawsuits Involving The
             Interpretation Of Federal Contracts Trigger Application of Federal
             Law And Thus Invoke Federal Subject Matter Jurisdiction Is Not
             Supported By Good Authority**
23

24        The City contends that federal subject matter jurisdiction is automatically triggered when a

25  lawsuit involves the interpretation of a contract to which the federal government is a party,

26            [4] See discussion infra at II E.
          [5] This issue was briefed in response to the Court's August 3, 2011 Order to Show Cause
27  [OSC] Re:  Federal Subject Matter Jurisdiction [Docket 24].  A hearing took place on August 29,
    2011.  A decision on the OSC is pending.
28

                                              3

1   whether or not the federal government is a party to the underlying lawsuit.  (City SMJ Brief at

2   p. 1:08-12 and p. 4:01-20.)  This contention was shown to be without merit in the State

3   Defendants' Reply to City of Palmdale's Response to Order to Show Cause Regarding Federal

4   Subject Matter Jurisdiction ("Authority SMJ Brief"), filed August 22, 2011 [Docket 28].  At the

5   August 29, 2011 hearing on the matter counsel for the City cited for the first time in support of

6   this position the case of *Marquette v. OneWest Bank Group LLC*, No. 2:11-CV-04115, 2011 U.S.

7   Dist. Lexis 80736 (C. D. Cal. July 22, 2011).  *Marquette* states that:

8       [a]n overwhelming amount [sic] of federal courts find that when a party claims to be
        a third-party beneficiary under a contract where the government is a named party,
9       then federal jurisdiction exists.

10  (*Marquette*, at * 3.)[6]

11      The *Marquette* decision cites to *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237

12  (9th Cir. 2009), which was reversed by the Supreme Court in *Astra USA, Inc. v. Santa Clara*

13  *County California*, 131 S. Ct. 1342 (2011).  Assuming *Santa Clara* is still good law, *Santa Clara*

14  does not stand for the proposition for which it is cited in *Marquette*.  The Santa Clara court held

15  that:

16      Federal law controls the interpretation *of the PPA* [pharmaceutical pricing agreement
        at issue in the case], which is a "contract[ ] entered into pursuant to federal law and to
17      which the government is a party," *Smith v. Cent. Ariz. Water Conservation Dist.*,
        418 F.3d 1028, 1034 (9th Cir. 2005), *and which expressly provides that it "shall be*
18      *construed in accordance with Federal common law*," see PPA § VII(g).

19  588 F.3d at 1243 (emphasis added).  *Santa Clara* does not stand for the broader proposition that

20  all lawsuits involving the interpretation of a federal contract automatically trigger federal subject

21  matter jurisdiction.[7]  Moreover, the Santa Clara court specifically reserved decision on whether

22  state or federal law created the underlying cause of action, an issue which the parties did not

23  dispute and which was not briefed.  (*Id.* at 1243, n.5.)

24

25  _____

26      [6] Counsel for the City interprets "named party" as referring to named party to the contract,
    not named party to the lawsuit.  The syntax is unclear.  Neither *Marquette* nor the case cited
27  therein, *Santa Clara*, *infra*, involves an action where the United States was a party to the lawsuit.
        [7] Nor does the *Smith* case cited in *Santa Clara* so hold.  (See Authority SMJ Brief at
28  p. 8:08-17.)

1   The Santa Clara court held that plaintiffs, county operated medical facilities, were intended

2   third party beneficiaries of pricing agreements between pharmaceutical companies and the federal

3   government.  The Supreme Court reversed, holding that no cause of action was stated and that the

4   plaintiffs were not third party beneficiaries.  *Astra*, 131 S. Ct. at 1347.  To the extent the City

5   relies on *Santa Clara* to support its position that it is an intended third party beneficiary of the

6   Grant Agreement, *Santa Clara* is not good law.

7   Moreover, since the Supreme Court issued its decision in *Astra*, counsel has found no Ninth

8   Circuit case citing *Santa Clara* for the proposition that any suit involving a federal contract

9   triggers the application of federal law and federal subject matter jurisdiction.[8]  This is clearly not

10  the law.  *See Miree v. DeKalb County, Georgia*, 433 U.S. 25, 31 (1977) ("[t]he question of

11  whether petitioner may sue respondent [under a theory that it is an intended third party

12  beneficiary of a contract with a federal government agency] does not require decision under

13  federal common law since the litigation is among private parties and no substantial rights or

14  duties of the United States hinge on its outcome.")  (See Authority SMJ Brief at pp. 1-4 and 6-8.)

15  Plaintiff has identified no rights or duties of the FRA under the Grant Agreement that are

16  implicated by this suit and therefore there is no basis for federal subject matter jurisdiction in this

17  case.

18          **2.      There Is No Federal Subject Matter Jurisdiction Because The City
                       Has Failed To Demonstrate Any Conflict Between The Application
19                     Of State Law And An Identifiable Federal Interest**

20  The City has identified no federal issue or concern that will be affected by the outcome of

21  this lawsuit, much less a substantial one.  Because the City has failed to demonstrate "a

22  significant conflict . . .  between an identifiable federal policy or interest and the operation of state

23  law," this Court lacks federal subject matter jurisdiction.  *Empire Healthchoice Assurance, Inc. v.*

24  *McVeigh*, 547 U.S. 677, 693 (2006) ("Unless and until that showing is made, there is no cause to

25  displace state law, much less to lodge this case in federal court.")  (See Authority SMJ Brief at

26          [8] *Santa Clara* appears to be cited for this proposition in *Nafso v. Wells Fargo Bank, NA*,
    No. 11-10478, 2011 WL 1575372, at *4 (E.D. Mich. April 26, 2011).  The parties in that case,
27  however, do not appear to have disputed that federal law controlled the interpretation of the
    agreement in question.
28

1  pp. 1-4 and 6-8.)  No federal issue is presented by the question of whether the City is an intended

2  third party beneficiary of the Grant Agreement.  California and federal law are the same on this

3  question.  *Beverly v. Network Solutions, Inc*., No. C-98-0337-VRS, 1998 WL 320829, * 5, n.2

4  (N.D. Cal. 1998).

5         **3.**      **The City Is Not An Intended Third Party Beneficiary Of The Grant Agreement And Therefore Lacks Standing To Invoke Federal**

6               **Subject Matter Jurisdiction Under That Contract**

7      The City's only basis for asserting federal subject matter jurisdiction in this case is its

8  contention that it is an intended third party beneficiary of the Grant Agreement.  As discussed in

9  the prior briefing on this subject, the City's conclusory allegation to this effect (par. 54 of the

10  Complaint) does not pass muster under Federal Rule of Civil Procedure, Rule 8(a).  (See

11  Authority SMJ Brief at pp. 8-10.)  *North Hartland, L.L.C. v. United States*, 78 Fed. Cl. 172, 179

12  (Fed. Cl. 2007) ("once . . . subject matter jurisdiction is put in question it is incumbent upon

13  plaintiff to come forward with evidence establishing the court's jurisdiction . . . . plaintiff must do

14  more than merely reiterate the facts in its well-pleaded complaint.")

15      The City's allegation of third party standing is flatly inconsistent with the language of the

16  Grant Agreement which disclaims any intent to benefit third parties.  (See Grant Agreement,

17  Ex. F to Complaint, at 91. General Provisions, Attachment 2, section 2[e].)[9]  And *see Klamath*

18  *Water Users Protective Association v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 2000) ("Parties

19  that benefit from a government contract are generally assumed to be incidental beneficiaries, and

20  may not enforce the contract absent a clear intent to the contrary.")  The fact that the Grant

21  Agreement identifies the City of Palmdale (along with several other California cities) as being

22  within the footprint of the high-speed rail system does not indicate a "clear intent" by the parties

23  to make Palmdale an intended beneficiary with an independent right of enforcement, especially in

24  light of the Grant Agreement's clear disavowal of any intent to create rights in third parties.  *Id.*

25  ("Government contracts often benefit the public, but individual members of the public are treated

26         [9] "No FRA Obligations to Third Parties:  Absent FRA's express written consent . . . FRA

27  shall not be subject to any obligations or liabilities to third party contractors or third party subcontractors *or any other person not a party to this Agreement* in connection with the performance of the project."  (Emphasis is added.)

28

State Defendants' Memorandum in Opposition to Motion for Preliminary Injunction (2:11-CV-01808-GEB-GGH)

1    as incidental beneficiaries unless a different intention is manifested.")  Since as a matter of law,

2    the City is not an intended third party beneficiary, it cannot rely on the Grant Agreement to

3    establish federal subject matter jurisdiction.

4        **C.    The Complaint Fails To State A Claim For Breach Of The Grant
                 Agreement As A Matter Of Law**
5
             **1.    The City's Interpretation Of The Grant Agreement Conflicts With
6                    The Environmental Laws**

7         The City contends that the listing of seven proposed alignments in the Grant Agreement

8    constitutes a promise that only those seven alignments, and no others, may be considered.  (PI

9    Opening Brief at 7:11-8:27, citing the Grant Agreement Statement of Work [Amendment], Ex. H,

10   at 193-203, specifically at 192-193.)[10]  This was never the intent of the parties and is not a fair

11   reading of the particular Statement of Work or the agreement as a whole.  The Grant Agreement

12   specifically provides for the possibility that alignments other than those specified in the original

13   agreement will be identified in the alternatives analysis process ("AA") required under the

14   environmental laws.  42 U.S.C. § 4332(C)(iii).

15           Alternatives Analysis:  . . . .The AA process is under way in all seven Sections and
             activities undertaken after the effective date of this Agreement are potentially eligible
16           under this Statement of Work.

17           Project Definition: . . . . Project definition will begin *after AA process is complete* . . .

18   (Grant Agreement, Exhibit H, at 195, emphasis added.)

19        Reading the Grant Agreement as limiting the Authority to considering only those

20   alignments identified at the time the Agreement was executed would put the Grant Agreement in

21   conflict with state and federal environmental laws which require that a reasonable range of

22   alternatives be considered based on currently available information.  "[I]nherent in NEPA and its

23   implementing regulations is . . .  that agencies determine whether and to what extent to prepare an

24   EIS based on the usefulness of any new potential information to the decision-making process."

25   *Department of Transportation v. Public Citizen*, 541 U.S. 752, 768 (2004).  The Authority has

26
     _____
27       [10] Counsel miscites the quoted portion of the Grant Agreement in its PI Opening Brief.
     Counsel adds (and bolds) the word "Approved" before the term Section.  (PI Opening Brief at
28   p. 8:10-19.)

                                                   7
     _____
     State Defendants' Memorandum in Opposition to Motion for Preliminary Injunction (2:11-CV-01808-GEB-GGH)

1    more information available to it today than it did at the time the Palmdale alignment was

2    identified as the preferred alignment in the high level 2005 Program Level Environmental Impact

3    Statement ("Program Level EIS"); it is not only logical but fully consistent with the

4    environmental laws that the Authority should exercise its discretion to consider potential

5    alternatives. [11] (Declaration of Timothy B. Buresh in Support of State Defendants' Opposition to

6    Preliminary Injunction, filed herewith, at pars.3-7;  and see Ex. M to Complaint [Docket 22/#2],

7    Proposal to Reintroduce Study of an [I-5] Grapevine Alternative between Bakersfield and Sylmar,

8    at 430-431.)

9              2.      **The Parties To The Grant Agreement Have Amended The**
                       **Agreement To Make Clear That It Does Not Foreclose Analysis Of**
10                     **Additional Alternative Routes**

11         In any event, since the filing of this lawsuit the FRA and the Authority have amended the

12   Grant Agreement.  (Buresh Dec. at pars. 15-16.)  Although the primary purpose of the

13   amendment was to address the receipt of additional funds made available after the State of Florida

14   rejected federal high-speed rail money, other changes were made.  The portion of the Grant

15   Agreement relied on by plaintiff now reads as follows:

16         Alternatives Analysis:  The Authority, with FRA <u>approval</u>, will conduct an Alternatives
           Analysis (AA) in each Section to help identify the alignments and station locations to
17         carry forward in the environmental review.  The AA process will define potentially
           reasonable and feasible project alternatives, design options, and station locations that can
18         meet the NEPA Purpose and Need and CEQA project objectives while avoiding or
           minimizing environmental impacts.  <u>Nothing in this Agreement shall preclude the</u>
19         underline{consideration or further study (and associated funding under this Agreement) of any}
           underline{reasonable alternative(s) to complete the CHSTP, including reasonable alternative(s)}
20         underline{outside the currently identified Section(s) set forth above and elsewhere in this Agreement}
           underline{as is appropriate under either NEPA or CEQA.} (The AA process is under way in all seven
21         Sections and activities undertaken in developing the alternatives analysis after the
           effective date of this Agreement are potentially eligible under this Statement of Work.)
22

23

24   (Revised Grant Agreement at pp. 9-10, Ex. 1 to Buresh Dec. (additions are underlined); See also

25   State Defendants' Request for Judicial Notice ["RJN"], filed herewith, at par. 3.)  A footnote was

26

27         ───────────────
               [11] The Authority exercises great discretion in making such decisions. *Kleppe v. Sierra*
28   *Club*, 427 U.S. 390, 410, n. 21 (1976).)

1    added at the end of this paragraph: "Any modifications to this paragraph made through

2    Amendment 2 confirms the parties' intent and mutual understanding reached in the original

3    Cooperative Agreement executed September 2010." (*Id.*)  The City can no longer argue in good

4    faith that that consideration of the I-5 Study violates the terms of the Grant Agreement.

5          **D.    The Complaint Does Not Satisfy The Constitutional Case Or Controversy**
               **Requirement**

6

7          "Article III of the Constitution requires that there be a live case or controversy at the time

8    that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987).  Since there is

9    no allegation that the Authority has yet sought, or that the FRA has yet made, any payment under

10   the Grant Agreement related to the disputed Study, the City seeks an advisory opinion about a

11   *potential* breach of a contract to which it is not a party.  *Cf. S.D. Meyers v. City and County of*

12   *San Francisco*, 253 F.3d 461, 476 (9th Cir. 2001) (analyzing case-or-controversy requirement of

13   third party to assert challenge to contract).  If use of federal funds for the I-5 Study violates the

14   Grant Agreement, the FRA will simply not reimburse the Authority for the costs of the Study.

15   (See Grant Agreement, Ex. F, at 93-96 [discussing payment provisions based on reimbursed

16   costs].)[12]  There is no need for the City of Palmdale to sue to enforce the Grant Agreement.  This

17   Court should refrain from rendering an unconstitutional advisory opinion.  *Id.* at 476.

18         **E.    The Complaint Fails to State Any Legally Cognizable Claim And Is An**
               **Improper Attempt To End-Run The Environmental Laws**

19

20         Counsel for the State defendants has found no federal statute authorizing suit for "misuse"

21   of federal funds and the City has cited none.  Indeed, by conceding that its only basis for federal

22   subject matter jurisdiction is as a third party beneficiary under the Grant Agreement, the City

23   implicitly acknowledges that no such cause of action exists.   The City has not, and cannot, assert

24   a violation of the False Claims Act.  The False Claims Act, among other things, requires proof of

25   "a false or fraudulent claim for payment"--not alleged here.  31 U.S.C. § 3729(a)(1)(A).  *See*

26        [12] See also PI Opening Brief at p. 2:24-25:  "Both funding sources [the Grant Agreement
         and Proposition 1A] provide that the Authority will be reimbursed for authorized expenses after
27       they are incurred."  And see PI Opening Brief at p. 9:13-22 (discussing allowable costs under the
         Grant Agreement.)

28

1    *United States v. Butler Hughes Helicopters, Inc.*, 71 F.3d 321, 329 (9th Circuit 1995) ("The

2    improper interpretation . . . of a contract, without more, does not constitute a false claim for

3    payment.")

4          Indeed, plaintiff's motivation for filing suit is patent.  It is attempting to pre-empt

5    environmental review of any alignment alternative that may result in the high-speed train not

6    running through the City of Palmdale.  This runs counter to the letter and spirit of the

7    environmental laws.  *Cf. National Resources Defense Council, Inc. v. Administrator, Energy*

8    *Research and Development Administration*, 451 F. Supp. 1245, 1262 (D.D.C. 1978) affirmed,

9    remanded and reversed in part at 606 F.2d 1261 (D.C. Cir. 1979) ("it is absolutely essential to the

10   NEPA process that the decision maker be provided with a detailed and careful analysis of the

11   relative environmental merits and demerits of the proposed action and possible alternatives, a

12   requirement that has been characterized as the 'linchpin of the entire impact statement'") (internal

13   citations omitted, quoting *Monroe County Conservation Council, Inc. v. Volpe*, 472 F.2d 693,

14   697-698 [2nd Cir. 1972]).

15         The legal vehicle to address the City's goal of keeping the high-speed train running through

16   Palmdale, however, is not this suit; it is a writ of mandate under the California Environmental

17   Quality Act ("CEQA") or an action under the National Environmental Policy Act ("NEPA")

18   challenging the adequacy of the Authority's EIS, *in the event that the final alignment chosen is*

19   *along the I-5 freeway and not through Palmdale.*  Such a suit, however, can only be brought *after*

20   the Authority has issued its project level EIS, and that is many months away.  (Buresh Dec. at

21   par. 7.)[13]  This Court should not countenance such an end-run of the environmental laws.

22   **F.    The Complaint Fails To State A Claim For Violation of Proposition 1A**

23         The failure of the City's count for "misuse" of federal funds renders this Court's review of

24   the City's state law claim unnecessary.  28 U.S.C. § 1367(c) (governing exercise of supplemental

25   _____

26   [13]A NEPA challenge cannot be brought prior to the taking of final agency action, here the
     issuance of the Project Level EIS, which has not yet occurred.  5 U.S.C. § 704; *State of Utah v.*
27   *Babbitt*, 137 F.3d 1193, 1203 (10th Cir. 1998).  An equivalent rule applies under CEQA.
     *California Water Impact Network v. Newhall County Water Dist.*, 161 Cal. App. 4th 1464, 1488
28   (Cal. App. 2008).

1    jurisdiction); *Imagineering, Inc. v. Kiewit Pacific Company*, 976 F.2d 1303, 1309 (9th Cir. 1992)

2    (exercise of pendent jurisdiction to hear state law claims is within district court's discretion).

3    Nevertheless, the State defendants address this claim for the sake of completeness.

4         Proposition 1A (like the Grant Agreement) clearly contemplates that the alignments

5    identified at the time the legislation was passed in 2008 would be subject to modification during

6    the environmental review process.  California Streets and Highways Code Section 2704.06

7    provides that:

8         The net proceeds received from the sale of nine billion dollars ($9,000,000,000)
     principal amount of bonds. . . shall be available . . . for (a) planning the high-speed
9    train system and (b) capital costs . . . consistent with the authority's certified
     environmental impact reports of November 2005 and July 9, 2008, *as subsequently*
10   *modified pursuant to environmental studies conducted by the authority*.

11   (Emphasis is added.)

12        Of the initial seven corridors designated in Proposition 1A for high-speed rail, one has

13   already been removed from consideration as a result of the environmental review process.  The

14   Altamont Corridor listed in California Streets and Highways Code § 2704.04(b)(3)(G),

15   connecting San Francisco to San Jose, was dropped.  Access to San Francisco from the Central

16   Valley has been determined to be over the Pacheco Pass, not over the Altamont Pass.   (See the

17   September 2, 2010 Bay Area to Central Valley High-Speed Train Revised Final Program

18   Environmental Impact Report, available on the Authority's website at http://www.cahighspeedrail

19   ca.gov/ba cv program eir.aspx.  See specifically Chapter 7 of Volume 1.  State Defendants' RJN,

20   at par. 2.)

21        The City's reliance on a memorandum prepared by the Authority's former counsel, Deputy

22   Attorney General George Spanos, for the contention that Proposition 1A does not allow the

23   Authority to consider alignments other than those identified when Proposition 1A was passed in

24   2008 is misplaced.  (PI Opening Brief at 13:14-19; Memorandum, Ex. Q to Complaint [Docket

25   22].)  The memorandum concludes that Proposition 1A does not permit the Authority to

26   "redefine" the Phase 1 Corridor of the high-speed rail project by eliminating some portion of it.

27   (Memorandum, Ex. Q, at 466.)  Phase 1 is defined as "the corridor of the high-speed train system

28   between San Francisco Transbay Terminal and Los Angeles Union Station and Anaheim."  Cal.

11

1  Sts. & Hy. § 2704.04(b)(2).  The person requesting the memorandum wanted to know if the high-

2  speed rail system could stop in San Jose and not proceed on to San Francisco.  (Memorandum,

3  Ex. Q, at 466)  The possible substitution of an alignment that follows the I-5 freeway for one that

4  goes through the City Palmdale does not change Phase 1 of the project.  Moreover, counsel for

5  the City miscites this memorandum as being authored by the Attorney General.  (PI Opening

6  Brief at 13:14-19.)  It is not a formal Attorney General Opinion and the author specifically

7  disclaims it as such.  (Memorandum, Ex. Q at 466.)

8  **III.    THE CITY OF PALMDALE HAS ALLEGED NO LEGALLY COGNIZABLE HARM**

9       Weak as are the arguments supporting the City's case on the merits, its allegations of

10  irreparable harm are even weaker.  These consist of hyperbolic protestations that funding the I-5

11  Study puts the entire $43+ billion project in jeopardy.  (See PI Opening Brief at p. 13:04-13.)

12  Such claims are speculative and over-blown.  *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098

13  (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm.")  As

14  discussed above, if the I-5 Study violates the Grant Agreement, the FRA will simply not

15  reimburse the Authority the approximately $700,000 the Study cost.  It does not follow that this

16  will lead to the FRA withdrawing the over $3 billion in federal funding that has so far been

17  designated for the project.

18       And if undertaking the Study were somehow determined to violate state law, e.g., not

19  comply with Proposition 1A, then there is a remedy to recover the funds.  The remedy would

20  either be a suit against the individual(s) responsible for authorizing the expenditure (assuming

21  there was proof of negligence) or suit against the contractor for reimbursement of the costs of the

22  Study.  *Stevens v. Geduldig*, 42 Cal.3d 24, 35 (Cal. 1986) ("a right of action exists in the state to

23  recover money paid to a contractor and the state is not estopped to deny the validity of such a

24  contract even where it has received the benefit of full performance") (citing *Pacific Inter-Club*

25  *Yacht Assn. v. Richards*, 192 Cal. App. 2d 616, 619-620 (Cal. App. 1961). [14]  There is no

26  _____

[14] The City appears to be under the mistaken belief that Proposition 1A requires a dollar
for dollar match of state and federal money on every item.  There is no support for this.

27  Proposition 1A requires that no more than 50% of the total cost of *construction* be paid out of
state bond funds.  Cal. Sts. & Hy. $ 2704.08(a).  And even this provision does not require that the

28                                                                                              (continued…)

12

1    irreparable harm.  *Ford v. Reynolds*, 316 F.3d 351, 355 (2nd Cir. 2003) ("To establish irreparable

2    harm, the injury alleged must be one requiring a remedy of more than mere money damages.")

3            In fact, the City has alleged no legally cognizable harm that it will suffer as a result of the

4    Study going forward.  The Declaration of Palmdale City Manager, Stephen Williams, outlines

5    planning and other actions taken by the City in reliance on the expectation that the high-speed

6    train will go through Palmdale and argues for keeping high-speed rail in the Antelope Valley.

7    (Declaration of Stephen H. Williams in Support of City of Palmdale's Motion for Preliminary

8    Injunction, filed July 19, 2011 [Docket 14].)  None of this, however, is relevant to the issue at

9    hand--funding the I-5 Study to determine whether it might offer a feasible alternative route.

10           The City simply has no legally cognizable expectation interest in the choice of a particular

11   alignment.  Neither the Grant Agreement, nor CEQA, nor NEPA, nor any other law, creates a

12   legal duty running from the Authority to the City to select a particular alignment.  *Kartman v.*

13   *State Mutual Automobile Insurance Company*, 634 F.3d 883, 889 (7th Cir. 2011) ("a claim of

14   injury is not cognizable unless it results from the breach of a recognized legal duty owed to the

15   plaintiff.")

16   **IV.**    **THE AUTHORITY WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS GRANTED;**
            **THE BALANCE OF EQUITIES WEIGHS  IN THE AUTHORITY'S FAVOR AND AN**
17          **INJUNCTION IS NOT IN THE PUBLIC INTEREST**

18           **1.**    **The Authority Will Suffer Irreparable Harm If The Injunction Is**
                   **Granted And The Balance Of Equities Weighs In The Authority's**
19                 **Favor**

20           While the City has identified no legally cognizable harm that it will suffer if its motion for

21   preliminary injunction is denied, the harms that would flow to the Authority as a result of

22   granting the injunction and suppressing the Study are potentially devastating.  (Buresh Dec. at

23   pars. 8-14.)  The project is already subject to a very tight schedule as most of the $3 billion in

24   federal monies must be spent by September 2017 or the money will be lost.  (*Id.* at par. 10.)  If

25   this Court were to rule that the Study was improper, the Authority would likely need to seek

26   _____

27   (…continued)
     50/50 match be item for item. Some items may be paid for entirely with federal funds.  Other
     items may be paid entirely out of state funds.  The totals spent must be the same.
28

13

1    expedited appellate review and the delay occasioned by this would be extremely detrimental.

2    Delay, and its handmaiden, uncertainty, are the most serious threats to the project.  (*Id.*)

3         In addition, the Authority is currently preparing a Business and Funding Plan for submittal

4    to the Legislature in October.  Cal. Sts. & Hy. § 2704.08(c) (Buresh Dec. at par. 12.)  It is critical

5    that the Authority provide the Legislature with the best information available about project costs

6    and implementation.  Whatever the Study may ultimately show--whether it recommends

7    including the I-5 alternate route or not--not having the Study hampers the ability of legislators to

8    make fully informed decisions.

9         Finally, if the Court were to order that the Study be suppressed, there is a distinct possibility

10   that the Authority's failure to consider the I-5 Grapevine alignment could be used against it in a

11   future CEQA challenge to the project level EIR/EIS for the Southern California portion of the

12   route.  The decision in the 2005 Program Level (or first tier) EIS to select the Palmdale alignment

13   over the I-5 alignment does not constitute res judicata on the question and will likely not insulate

14   the Authority from a CEQA challenge to the Project Level (or second tier) EIS based on an

15   argument that the Authority failed adequately to consider the alternative of going along the I-5.

16   *Cf.  National Resources Defense Council v. United States Nuclear Energy Regulatory*

17   *Commission*, 606 F.2d 1261, 1271, n. 36 (D.C. Cir. 1979).

18        The balance of equities clearly favors the Authority.

19        **2.    Granting An Injunction Would Not Be In The Public Interest**

20        In its Opening Brief the City contends that granting the injunction would be in the public

21   interest *because high-speed rail is in the public interest*.  (PI Opening Brief at pp. 16:06-18:15.)

22   None of this addresses why *granting the injunction* is in the public interest.  As previously

23   discussed, concluding the I-5 Study will not put federal funding in jeopardy and does not threaten

24   the viability of the project.  A greater threat to the project is the suppression of relevant

25   information.  Clearly it is against the public interest to limit the information available to the

26   Authority, the Legislature and the citizens of California about possible alternative alignments that

27   may significantly reduce project cost and increase project efficiencies.

28

14

1

**V.   THE CITY MUST POST A BOND IN THE AMOUNT OF $100 MILLION BEFORE ANY INJUNCTION ORDER IS ISSUED**

2

3        Under Local Rule 231(c)(6) plaintiff is required to file a proposed order with a provision

4    for bond.  The City's Proposed Order [Docket 18] does not address the question of a bond.  In the

5    unlikely event the Court should be inclined to grant the motion for preliminary injunction, the

6    State Defendants request that bond be issued in the amount of $100 Million.  (Buresh Dec. at

7    par. 14.)

8                                    **CONCLUSION**

9        For all the foregoing reasons, the motion for preliminary injunction should be denied.

10

11   Dated:  September 12, 2011                  Respectfully Submitted,

12                                              KAMALA D. HARRIS
                                                Attorney General of California
13                                              WILLIAM L. CARTER
                                                Supervising Deputy Attorney General
14

15

16                                              _____/s/_____
                                                AMY J. WINN
17                                              Deputy Attorney General
                                                *Attorneys for Defendants California High-*
                                                *Speed Rail Authority and Chief Executive*
18                                              *Officer Roelof van Ark*

19
     SA2011101742
20   10750459.docx

21

22

23

24

25

26

27

28

                                        15